**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BETTY ANN MILLS,**

                **Plaintiff,**　　　　　　　　5:11-cv-955
　　　　　　　　　　　　　　　　　　　　　　　(GLS)
                v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                **Defendant.**
_____

**APPEARANCES:**　　　　　　　　　　　**OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group　　　　　　　　　　HOWARD D. OLINSKY, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN　　　SERGEI ADEN
United States Attorney　　　　　　　Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

# I. Introduction

Plaintiff Betty Ann Mills challenges the Commissioner of Social Security's denial of her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Mills' arguments, the Commissioner's decision is reversed and remanded.

# II. Background

On September 24, 2009, Mills, who suffers from, among other things, coronary artery disease, filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since June 11, 2009. (*See* Tr.[1] at 77, 178-90.) After her applications were denied, (*see id.* at 87-94), Mills requested a hearing before an Administrative Law Judge (ALJ), which was held on February 2, 2011. (*See id.* at 28-68, 98.) On April 5, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-6, 72-86.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 10.)

Mills commenced the present action by filing her Complaint on August 12, 2011 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 13, 14.)

### III. **Contentions**

Mills contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 13 at 12-25.) Specifically, Mills claims that the: (1) ALJ erred by failing to find that listing 1.04 was met; (2) residual functional capacity (RFC) determination is unsupported by substantial evidence and is the product of legal error; (3) ALJ failed to apply the appropriate legal standards in assessing her credibility; and (4) step five determination is unsupported by substantial evidence. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (*See* Dkt. No. 14 at 12-24.)

### IV. **Facts**

The court adopts the parties' undisputed factual recitations. (*See*

3

Dkt. No. 13 at 2-12; Dkt. No. 14 at 2-12.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Listed Impairment

At step three, the ALJ determined that Mills' central disk herniation, canal stenosis, and osteophytes, though severe, did not meet or medically equal a listed impairment. (*See* Tr. at 77-78.) Mills contends that the ALJ erred in this determination, contending that her neck impairment met Listing 1.04(A). (*See* Dkt. No. 13 at 14-17.) To satisfy Listing 1.04(A), a claimant must show that she suffers from a spinal disorder resulting in the

---

[2] Specific reference to 42 U.S.C. § 1383(c)(3) is unnecessary because judicial review under that section is identical to review under section 405(g).

4

compromise of a nerve root or the spinal cord with evidence of: (1) nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss accompanied by sensory or reflex loss; and (4) if there is involvement of the lower back, positive straight-leg raising test.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A).  Contrary to Mills' contentions, substantial evidence supports the ALJ's determination that her neck impairment did not satisfy this listing.

As an initial matter, the record contains no medical evidence pertaining to Mills neck injury from or relating to the period since her alleged disability onset date—June 11, 2009.  (*See* Tr. at 178, 185.)  Notably, medical records which predate the claimant's alleged onset date can "prove to be relevant to a claimant's later condition provided that there is indication that the symptoms experienced extended in duration into the relevant time period."  *Baggett v. Astrue*, Civ. Action No. 5:11-CV-0195, 2012 WL 2814369, at *8-9 (N.D.N.Y. June 13, 2012).  In any event, although it is not disputed that Mills was diagnosed with cervical radiculopathy[3] in 2005 and the record contains findings of muscle

---

[3] Radiculopathy is a disease of the nerve roots. *See* Dorland's Illustrated Medical Dictionary 1404 (28th ed. 1994).

weakness, sensory or reflex deficits and limited range of motion, (*see* Tr. at 320, 323, 326, 332, 334, 336, 338, 341, 345, 348, 350, 352, 372), the record contains substantial evidence to support the conclusion that Mills did not suffer from each of these deficits continuously through the relevant period, thereby failing to satisfy Listing 1.04(A). *See* 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

Mills began seeing treating physician Heather Finger for neck pain following a motor vehicle accident in September 2004. (*See* Tr. at 318, 372.) On October 4, 2004, Dr. Finger examined Mills and noted that she had "full range of motion about her neck and shoulders bilaterally," however, her grip strength was weakened and sensation was decreased. (*Id.* at 372.) Thereafter, Dr. Finger found that Mills was improving although she still experienced some numbness, weakness, and pain. (*See id.* at 323, 325.) Notably, Mills returned to work after the accident, performing her janitorial duties other than moving and carrying large bins of trash, until December 6, 2004, when she reported that her symptoms were getting worse. (*See id.* at 325, 328, 331-32.) In April 2005, Dr. Finger diagnosed

6

Mills with radiculopathy. (*See id.* at 336.) Mills continued to seek treatment with Dr. Finger for neck pain through October 2005. (*See id.* at 313-52, 372.) In September 2005, Mills reported that she felt "very well" and wanted to go back to work. (*Id.* at 348.) Thereafter, Dr. Finger examined Mills and found she had full range of motion in her neck, motor tone in her upper extremities was a full 5/5 bilaterally, her deep tendon reflexes were "two plus and symmetric," and her sensation was grossly intact to light touch. (*Id.* at 350.) Based on that examination, Dr. Finger determined that Mills' cervical sprain was improved and she could continue her work full time.[4] (*See id.*) Subsequently, in March 2006, Mills reported to a nurse practitioner that her neck pain and hand strength were better, but complained of numbness in her right hand. (*See id.* at 352.) The nurse practitioner examined Mills and found the range of motion of her neck was good, hand grasps were strong and equal, and deep tendon reflexes were fully intact to the upper extremities. (*See id.*) Finally, at the administrative hearing, Mills testified that she still experienced pain in her neck "occasionally" and that her hands still go numb. (*Id.* at 40-41.)

---

[4] Indeed, Mills worked full time, doing janitorial work, until June 10, 2009. (*See id.* at 33, 37, 210, 214-16.)

Ultimately, substantial evidence supports the ALJ's finding that Mills' impairment did not meet Listing 1.04(A) as it did not produce all of the required deficits and limitations since the date her alleged disability began. Accordingly, the court affirms the ALJ's step-three determination.

## B.   Residual Functional Capacity

Next, Mills contends that the ALJ's residual functional capacity finding is unsupported by substantial evidence and the product of legal error. (*See* Dkt. No. 13, at 17-21.) Specifically, Mills alleges that the ALJ failed to develop the record by failing to obtain: (1) the opinions of any of her treating physicians as to her functional limitations; (2) additional medical records from her treating sources; and (3) any mental or physical consultative examinations. (*See id.*) The court agrees that remand is necessary.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* §§ 404.1545(a)(3), 416.945(a)(3). An ALJ's RFC determination must be

supported by substantial evidence[5] in the record.  *See* 42 U.S.C. 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  It is well established that the ALJ has an obligation to thoroughly develop the record, considering "all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  SSR 96-8p, 1996 WL 374184, at *5; *accord Falcon v. Apfel*, 88 F. Supp. 2d 87, 90-91 (W.D.N.Y. 2000); *see, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  However, where there are no obvious gaps, and the record presents "a 'complete medical history,'" the ALJ is under no duty to seek additional information before rejecting a claim.  *Rosa,* 168 F.3d at 79, n.5 (quoting *Perez,* 77 F.3d at 48).

Here, Mills began treatment with physician Mazen Beshara in April 2009, complaining of chest pain.  (*See id.* at 381-83.)  Thereafter, Dr.

---

[5] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

9

Beshara diagnosed Mills with aortic stenosis and hypertension and restricted Mills from lifting, pushing, or pulling over thirty pounds. (*See id.* at 386.) Subsequently, Mills underwent an aortic valve replacement, performed by treating physician Randall Green. (*See id.* at 285-86.) Following the procedure, Mills was instructed to refrain from driving or lifting more than five pounds. (*See id.* at 289.) Thereafter, chest x-rays revealed that her tubes and lines were satisfactorily positioned and heart size and pulmonary vasculature were normal. (*See id.* at 283, 495.) In a follow up visit with Dr. Beshra, Mills' aortic prosthetic valve was found to be "functioning normally with no evidence of stenosis or significant insufficiency" but she was again instructed to refrain from lifting, pushing, or pulling more than thirty pounds. (*Id.* at 398, 402.) Beginning in March 2009, Mills complained to various treating sources—including Dr. Finger who subsequently diagnosed Mills with chronic sinusitis—of shortness of breath and fatigue. (*See id.* at 357, 362, 390, 414, 486-91, 496.) Notably, the record lacks any medical source statements or opinions as to Mills functional physical limitations from any of these treating sources or a consultative examiner.

In addition to the above referenced physical impairments, Mills

testified that she experienced depression and anxiety every day and reported that she "can't be around a lot of people," was easily stressed, and stress or changes in schedule caused her to be "homebound a lot." (*Id.* at 226, 228; *see id.* at 52-55.) Mills testified that she was being treated for depression by her doctor who had prescribed an anti-depressant, however, the record lacks any medical evidence, from treating sources or consultative examiners, with respect to her mental impairments. (*See id.* at 52.)

Notably, "'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment.'" *Walker v. Astrue*, No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (quoting *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 17 (1st Cir.1996)). Otherwise, although the RFC determination is an issue reserved for the commissioner, *see* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c), "'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.'" *Dailey v. Astrue*, No. 09-CV-0099,

11

2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D.Ohio 2008)).

Here, the ALJ determined that Mills had the RFC to:

> perform light work . . . except that [she] must work in a job where she is allowed to sit or stand alternatively at will, but would not have to leave the workstation; she may only occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; only occasionally balance, stoop, kneel, crouch, bend or crawl; she must avoid all concentrated exposure to operational control of moving machinery and unprotected heights; and avoid all concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. The claimant is further limited to simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes.

(Tr. at 78.) Notably, the RFC determination accounted for the affects of Mills' mental impairments on her ability to function without any medical evidence to support such assessment. (*See id.*) As the evidence before the ALJ was inadequate to properly determine Mills' RFC with respect to her mental impairment, the ALJ should have attempted to contact Mills' treating physician or obtained a consultative psychological examination to complete the record. *See Williams v. Astrue*, Civ No. 5:09-CV-1092, 2012 WL 760738, at *5 (N.D.N.Y. Mar. 8, 2012); *Hopper v. Comm'r of Soc. Sec.*,

No. 7:06-CV-0038, 2008 WL 724228, at *11 (N.D.N.Y. Mar. 17, 2008). Further, although the record contains objective medical evidence and treatment notes with respect to Mills' physical impairments, because the medical evidence reflected more than "relatively little physical impairment," the ALJ required a physician's assessment to determine her RFC. *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866, at *1-2 (N.D.Ohio Oct. 21, 2011) (internal quotation marks and citation omitted). Because there is no medical source opinion supporting the ALJ's finding that Mills can perform "light work" with additional exertional restrictions, the court concludes that the ALJ's RFC determination is without substantial support in the record. (*Id.* at 78.) Finally, because Mills' remaining contentions may be impacted by the subsequent proceedings directed by this Order, it would be improper for the court to consider them at this juncture.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 21, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court